HARDY, Judge.
This is an action in boundary in which plaintiff seeks to have judicially fixed the boundary line between his property and the adjacent tracts of the three named defendants, all located in Union Parish, Louisiana. Pursuant to the prayer of the petition the court appointed Bruce Allen, a licensed surveyor of Union Parish, to inspect, survey and establish the boundary lines between the properties described. The surveyor duly filed a procés verbal and plat of survey. The lines established by the court-appointed surveyor were accepted by plaintiff and by the defendants, Mrs. Minor Aycock and Mrs. Minnie Geter, neither of whom had filed any pleadings in the suit. The defendant, S. J. Carter, filed an opposition and a motion to traverse the report of the surveyor. This defendant also filed a plea of prescription of ten and thirty years. After hearing on defendant’s motion to traverse there was judgment in favor of plaintiff approving and homologating the survey, made and filed by the court-appointed surveyor, and establishing the lines as fixed in the plat of survey. From this judgment defendant Carter has appealed.
Defendant urges, first, that the record does not disclose the surveyor Bruce Allen to be either a licensed surveyor or a graduate engineer, and, second, that the survey made was so inaccurate, uncertain and indefinite that it cannot serve as a basis for judicial determination. Additionally, defendant re-urges his plea of prescription.
We do not find any support for defendant’s first ground of complaint. The order of the court discloses the appointment of Bruce Allen, “a license surveyor in and for Union Parish — the procés verbal and plat filed in the record bear the signature of *680 , Bruce Allen, “registered surveyor”, and the registry .stamp, or seal, of the State of Louisiana; and, finally, the record discloses ■'no attack upon the qualifications of the surveyor and contains no evidence which would substantiate this opposition.
■The second point is more serious. The testimony of the surveyor Allen establishes ■the facts that he properly notified the adjoining landowners, by certified mail, .that such parties were present during the making of all or a part of the survey, and that the rodmen and other members of his crew were properly qualified for their work. The methods pursued by the surveyor and the reasons upon which he based the establishment of the lines and the fixing of corners as set forth in his plat of survey are stated in Mr. Allen’s testimony, which we quote as follows:
“Q.' Now, I would like for you to explain to the Court what steps you took in making this survey.
“A. Well, for the lack of a better point to start from we started at what • was supposed to be the Southeast corner of Section 7, Township 23 North, Range 3 West at an iron axle that was in the ground which several of the ones present thought it was right and one or two didn’t think it was right, but we didn’t have a better place to start from so we started there and ran one half mile north and, according to the field notes, we were supposed to be about thirty-three feet across Beaver Creek and we were not, we didn’t even — I believe we got, maybe liked a little bit getting to Beaver Creek, that’s the way it was. So then, we didn’t exactly know what to do then, we didn’t think that was right, but we didn’t know where to go and Mr. Carter suggested that we go a half of a mile east to a corner of his land which he didn’t know whether it was right or wrong, but as far as he knew the corner was 'right. So we went over there and there was an old man, I believe he said he was about eighty years old or maybe a little older, Jim Scott, showed us the corner Mr. Carter was talking about, it was an iron pipe driven under the ground, we had to take a hoe to — in order to find it and this old man, Scott, said that Mr. Rabun put it there about forty or forty-one years ago, I believe. So— first his wife told us all of that, Scott wasn’t at home, he came in later before we got started and agreed to the same thing that his wife had told us. We went — from there we went a quarter back west and found a pine knot which was still on Mr. Carter’s land and was another corner of this Scott fellow’s land and they told— said as far as they knew this was right that they didn’t have any reason — it had been there a long time and they didn’t have any reason to believe it was wrong. So from there we went on another quarter west and we intersected a line we had previously run north about sixty-eight feet north from where we had stopped and we were about thirty-three feet north of Beaver Creek which was as it was supposed to be according to the field notes which made the iron axle sixty-eight feet south of where it should have been. Then we did a little more running from another corner which didn’t — we didn’t know whether it was right or not anyway so it really didn’t amount to too much, but we went back to this iron axle and measured back north sixty-eight feet which would’ve made it tie into the other two corners and tie in with Beaver Creek and we found — first found a pine stump that was mentioned as one of the original witness trees in the field notes and from this pine stump we measured the correct bearings and distance from the stump and found a pine knot which was decayed quite a bit under the ground, there was just a little splinter of it sticking up and there was. some *681 pretty good size roots that had grown over it, in other words, it had been there, in my opinion, it is the same pine knot that was put there in the original government survey because it did check with bearings and distance from an original witness tree and it definitely had been there for quite a long period of time and from this— and from this point we then ran around the twenty acres in question. We didn’t tie it into any other section corners because I did check on the other corners of the section and there wasn’t any apparent corner there and it would have taken probably several weeks and cost quite a bit of money to tie this corner in with all the other —with the four comers of the section. However, since this twenty acres was so near, it was in the same forty as the southeast corner of the section, I don’t think it would be much error in just — we just tied in this one proven corner was all, but it was within — it was in — mighty close to it.”
Despite additional elaboration and further development during the course of direct and cross examination, we think the above extract of testimony gives a reasonably complete picture of the actual surveying operation, and we are impelled to the conclusion that it leaves much to be desired with respect to that accuracy and certainty which should be established as the basis for judgment. It is clear that the surveyor relied upon his acceptance of only one corner which he considered to be satisfactorily proven, that is, the southeast corner of Section 7. From this corner, and from this corner alone, the surveyor proceeded to establish and define the lines which eventually led him to the fixing of the boundaries of the tract of land here involved. It is evident that the surveyor made no effort to locate .other subdivision markers, and, in truth, it is clear he accepted the accuracy of this one corner only because.its establishment permitted the working out of the complete survey in accordance with What he regarded as a correct determination. This conclusion was advanced by the witness as' one of the reasons why he did not make an. attempt to locate other established markers, and another reason was expressed as being due to the increased cost of such procedure.' It has been pointed out that the distance' from the corner, which was used by the1 surveyor, to the Arkansas state line was only a mile plus 52 chains, according to the testimony of the surveyor, who' fur--' ther stated that this was not an unreasonable distance if it had been necessary to verify his acceptance of the corner.
Our consideration of the testimony leads us to the conclusion that the survey as actually made is wanting in that degree of certainty and accuracy which is essential to the proper determination of boundary lines and limits.
With reference to defendant’s pleas of prescription, we need only observe that the evidence does not support their allowance.
Since, in our opinion, the evidence in the instant case does not justify the fixing of boundaries between the properties of plaintiff and defendants, it is necessary that this case be remanded to the Third Judicial District Court in and for Union Parish for further proceedings consistent with the making and establishment of a proper and accurate survey, and, accordingly, it is so ordered. Costs of this appeal are taxed against plaintiff-appellee, and it is ordered that all other costs shall await final adjudication hereof.